IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

JOHN CHAMBLEE,

      Petitioner,

v.                                      CASE NO. 1:04-cv-00392-MP-AK

JO ANNE B BARNHART,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act (Act) for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's applications for disability insurance benefits (DIB) under Title II of the Act and supplemental security income benefits (SSI) filed under Title XVI of the Act.

Upon review of the record, the Court concludes that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

## A.   PROCEDURAL HISTORY

Plaintiff filed an application for DIB and SSI on December 14, 2000, alleging a disability onset date of July 15, 1995, because of a bad back and wrist and hearing problems.  Plaintiff petitioned for a hearing before an administrative law judge (ALJ), who conducted a hearing on March 5, 2003, and entered an unfavorable decision on April 10, 2003.  The Appeals Council denied Plaintiff's request for review, thus making the decision of the ALJ the final decision of the Commissioner.  This action followed.

**B.**      **FINDINGS OF THE ALJ**

Based on the Plaintiff's earnings record, he is insured for benefits only through September 30, 1999.  (R. 14).  Medical evidence of record prior to this date includes chiropractic care from 1991 to 1995, and from January 1996 to September 1996, and consists of notes to stretch, use moist heat, and not to lift heavy objects or objects over 20 to 30 pounds.  (R. 15).  There are no medical records concerning back treatment from 1996 to January 2001, although Plaintiff was treated for cancer of the mouth during this time.  (R. 15).  Thus, the ALJ found that Plaintiff had no severe impairment prior to his date last insured.  (R. 15).

For purposes of analyzing his claim for SSI, which is not dependant upon insured status, the ALJ reviewed more recent medical evidence submitted by the Plaintiff, which includes a consultative examination done on March 14, 2001, at which it was noted a decreased range of motion of the lumbar spine and both hips, but no motor, sensory, or reflex abnormalities.  (R. 16).  No active inflammatory arthritis was noted and carpal tunnel syndrome, claimed by Plaintiff to limit his wrist and hands, could not be confirmed since Plaintiff exhibited no weakness in his hands or grip strength.  (R. 16).

Plaintiff's cancer was healing well and he was beginning to gain weight.  (R. 16).  He had also been treated successfully for hypertension (R. 16), and was examined for low back pain, but prescribed no medication and told to begin a regular exercise regimen.  (R. 16).

Based on these records, the ALJ found that Plaintiff has status-post chronic lumbar

strain and status-post malignant neoplasm of the jaw, which are severe impairments, but which do not meet any of the impairments in the Listing of Impairments. The ALJ specifically analyzed his claims under Listing 1.00 for musculoskeletal system disorders, but found that no treating or examining physician mentioned any of the objective signs and findings required to meet this listing.

The ALJ considered Plaintiff's testimony regarding his daily activities, which include his testimony that he does his own housework, laundry and dishes, he reads and stays on the computer from 45 minutes to one hour a day, his pain is not constant and comes and goes, and he goes to church twice a week. (Doc. 17). Plaintiff testified that he can bend occasionally, climb a short flight of stairs, and reach overhead. He can sit for one hour at a time without trouble, he can walk for 15 minutes at a time, and can lift 15 to 20 pounds. (Doc. 17). The ALJ noted that Plaintiff's reported daily activities, as well as his work recycling aluminum cans showed that he was capable of more physical exertion than he claimed. (R. 17). Further, the ALJ found that Plaintiff's reports of pain were not credible based on the fact that he used only over the counter pain medication and had not sought any treatment for his back since July 2002. (R. 17). None of Plaintiff's treating physicians had noted any severe limitations and Dr. Cox had, in fact, most recently advised Plaintiff to get more exercise. (R. 18). Considering the medical evidence, Plaintiff's testimony, and the functional assessments of the state agency, the ALJ found Plaintiff capable of sitting up to 6 hours, standing and walking two to four hours in an eight hour day, and lifting up to 10 pounds. These limitations did not preclude him from performing his past relevant work as a case aide and personal attendant, as well as a significant number of other jobs

which exist in the national economy such as credit card clerk and identification clerk.  This functional capacity assessment represents a full range of sedentary work and using the Medical-Vocational Guidelines, a finding of "not disabled" is in order.  (R. 19).

## C.   ISSUES PRESENTED

Plaintiff argues that the ALJ was prejudiced towards him and denied him a full and fair hearing; and the ALJ erred in not posing a hypothetical to the vocational expert that included all his impairments, specifically the exertional and non-exertional (pain) limitations of his impairments.

The government responds that even though the ALJ and Plaintiff's attorney had an exchange between them during the hearing which was inappropriate, to be disqualifying the alleged bias and prejudice "must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case," *citing* United States v. Grinnell Corp., 384 U.S. 563, 583 (1966). Further, the Commissioner notes that the ALJ need only pose to the vocational expert those limitations he finds supported by the record, and the medical evidence did not support a finding that Plaintiff needed to be off-task for five to 15 minutes at a time. Although Plaintiff testified to this limitation, the ALJ found his testimony not credible based on his self-reports about daily activities, including work activity.

The issue thus presented is whether the Commissioner's decision that Claimant is not disabled is supported by substantial evidence in the record and decided by proper legal standards.

**D.**     **STANDARD OF REVIEW**

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court.   The Commissioner's decision must be affirmed if it is supported by substantial evidence and the correct legal standards have been applied.  Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997).  Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).  "Substantial evidence" has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam).  It is more than a scintilla, but less than a preponderance.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted).   The court may not reweigh the evidence or substitute its judgment for that of the Commissioner.   Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996).   It must determine only if substantial evidence supports the findings of the Commissioner.  See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam). Even if substantial evidence exists which is contrary to the Commissioner's findings, where there is substantially supportive evidence of the Commissioner's findings, the court cannot overturn them.   Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991).   Unlike the deferential review accorded to the Commissioner's findings of fact, his conclusions of law are not presumed valid. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  The Commissioner's failure to apply correct legal standards or to provide the reviewing court with an adequate basis for it to determine whether proper legal principles have been observed requires reversal.  Id. (citations omitted).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps:

1.      Is the individual currently engaged in substantial gainful activity?

2.      Does the individual have any severe impairment?

3.      Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4.      Does the individual have any impairments which prevent past relevant work?

5.      Do the individual's impairments prevent any other work?

A finding of disability or no disability at any step renders further evaluation unnecessary. Plaintiff bears the burden of establishing a severe impairment that keeps him from performing his past work. If Plaintiff establishes that his impairment keeps him from his past work, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given Plaintiff's impairments, Plaintiff can perform. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); MacGregor v. Bowen, 786

F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, Plaintiff must prove that he cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).  It is within the district court's discretion to affirm, modify, or reverse a Commissioner's final decision with or without remand. 42 U.S.C. § 405(g); Myers v. Sullivan, 916 F.2d 659, 676 (11th Cir. 1990).

### E.   SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY

Plaintiff sought treatment from Dr. Phillip Tepperberg following two car accidents: one in 1991, where he was broad sided, and another in 1994, where he was rear-ended. Treatment following both accidents was conservative, and he was diagnosed with lumbar and cervical strain.  Following the first accident, Plaintiff was a care giver of the elderly which required a great deal of lifting. (R. 174-178).  He was kept off work for approximately six months, but was released on June 16, 1992, with instructions to continue stretching and exercising and to avoid lifting heavy objects.  (R. 177).

Apparently he returned to his same work without incident until another vehicle accident on June 21, 1994, when he again sought chiropractic treatment from Dr. Phillip Tepperberg for back pain following a rear end collision a week before.  (R. 96-194).  He was advised to stop all physical work at that time until the severe soft tissue injury could heal.  X-rays confirmed no fractures, no disc space narrowing, no spondylolysis, no arthritis, and he was deemed to have reached maximum medical improvement on February 1, 1995, with conservative treatment.  (R. 100).  He was told to expect a certain amount of discomfort with his cervical and lumbar spine and to avoid lifting.  (R. 100-101).

Additional chiropractic treatment was sought from Dr. Warren Carlyle from January

1996 through September 1996, with a notation on May 7, 2002, that Plaintiff had returned

for an adjustment after he was doing tree work and may have lifted too much.  (R. 248-

256).  It appears that Plaintiff required two adjustments at this time.  (R. 248).

A consultative examination by Dr. Robert Greenberg on March 14, 2001, found

Plaintiff to have "probable osteoarthritis of the lumbar spine and hips as result of previous

injuries," with decreased range of motion in those areas, and he opined that "the patient

would be unable to perform work related activities that require heavy lifting or bending," but

no other limitations were noted.  (R. 195-198).

Dr. Daniel Cox treated Plaintiff from March 6, 2001 to February 2003 for

hypertension and low back pain, but prescribed medication for blood pressure only, with

good result.  (R. 236-246).  He advised Plaintiff to begin a regular exercise program and

increase his walking for his low back pain.  (R. 239).

Plaintiff was treated for cancer of the anterior floor of the mouth, apparently

successfully, with no evidence of continuing disease.  (R. 207-227).

A RFC prepared by a state agency physician on March 19, 2001, found Plaintiff

capable of lifting 25 to 50 pounds, and sitting, standing or walking six hours out of an eight

hour day.  (R. 199-206).  No other limitations were noted.  Another RFC on July 26, 2001,

assessed Plaintiff with a reduced lifting capacity of 10 to 20 pounds and some postural

limitations of climbing, balancing, stooping and crouching, but also found Plaintiff capable

of sitting, standing and walking six hours out of an eight hour day.  (R. 228-235).

**F.    SUMMARY OF THE ADMINISTRATIVE HEARING (March 5, 2003)**

The ALJ almost immediately chastised attorney for the Plaintiff, Mr. Bacharach,

saying, "...sometimes you don't take the trouble to talk to your clients the way you should, but have you advised him that he was last insured for disability insurance benefits in September of 1999?"  (R. 275).  Plaintiff himself apparently did not hear this and the ALJ explained "because you were last insured for disability insurance benefits in 1999.  That means you have to establish that you became disabled for disability insurance purposes on or before that date, okay?  Because you're filing an application alleging an onset date of 1996 based mostly on chiropractic notes, which Social Security does not give a lot of weight because they are not medical sources.  And, to be truthful with you, there isn't a lot to support your claim of disability with these chiropractor notes." (R. 276).  Then, the ALJ says, "If I don't have evidence, Counselor, I can't...make a decision.  I can not even consider all of these years where there is no medical evidence so you may want to maybe change your onset date because really there is nothing until...from '95 to 2001, there is none, nada, in the record."  (R. 277).  The ALJ then says to the attorney, "Do a better job in screening your cases, Counselor."  Mr. Bacharach says, "Your honor, it's up to you to turn the people down.  He asked me to represent him.  I'm representing him.  I'm ready to do a hearing and attempt to establish he's entitled to disability benefits.  If you want to turn him down without a hearing...."  (R. 277-278).  The hearing proceeded at this point with submission of all exhibits and a line of questioning by the ALJ began.  (R. 279).

Plaintiff testified that he was 53 years old and had an AS degree in computer science.  (R. 279-280).  He presently does odd jobs for people such as fixing their sprinklers, a pump, feeding someone's dogs, minor electrical problems, for which he is paid in cash and has earned less than $3000.  (R. 281-282).  He also tutored people in

computer classes at a community college in 1999.  (R. 283).  Prior to that he worked as an

aide and companion to elderly and disabled persons.  (R. 283-286).  He helped one of

these persons with an aluminum recycling business, which involved lifting bags of

aluminum cans weighing 10 to 15 pounds and breaking down aluminum chairs.  (R. 291-

292).

Plaintiff claims that he can not do computer work because of his carpal tunnel

syndrome developed during his training, and because he cannot sit more than an hour at

a time.  (R. 293).  He might be able to sit longer with the right type of chair.  (R. 294).

Plaintiff says he can stand for about 15 minutes if he can move around and can lift only 15

to 20 pounds.  (R. 294).  His back is his main problem and the pain in his lower area, which

is not constant, requires 10 to 20 ibuprofen a day.  (R. 295).  He does not currently see

anyone for this problem.  (R. 295).  His pain is described as like being hit in the back with

a baseball bat, which he describes as a "a dull type pain."  (R. 295).  It is relieved when he

lays on his back with his feet up in the air like he was sitting in a chair laying down.  (R.

295).  Other than his cancer treatments, Plaintiff admits that he has seen a doctor only

once since 1996 for his back.  (R. 300).  He claims that he does not have the money to go

to doctors and has not been to the emergency room for treatment because "what they do

is hand me a bottle of painkillers and say go to sleep for two weeks.  So why waste my

money and their time."  (R. 297).  His other complaint is carpal tunnel syndrome for which

he has never received any treatment.  (R. 301).

A vocational expert was present and testified to the exertional levels of Plaintiff's

past work and found that while most of them were medium level, at least two jobs were

sedentary, and his skills were transferable.  (R. 319-325).  The judge gave the expert three hypotheticals: (1) sit and stand limited to six hours, lifting limited to 50 pounds (R. 322); (2) same, with a lift limit of 20 pounds (R. 323); and (3) sit for six hours, stand and walk two to four hours, and lifting limited to ten pounds.  (R. 324).  The expert found that at least two of Plaintiff's past jobs would still be available to him even at the most restricted level posed by the hypothetical. (R. 324).  Plaintiff's attorney added to the last hypothetical no bending, twisting, turning, stooping, or squatting, and the expert identified clerical services jobs and the case aide job Plaintiff performed in the past.  (R. 327-328).  Plaintiff's attorney also added that Plaintiff would need to be "off-task for 5 to 15 minutes out of each hour" because of pain, and the expert said no jobs would allow that.  (R. 331-332).  Shortly before this last question to the expert another exchange occurred between the ALJ and counsel for the Plaintiff where the ALJ said that counsel should have withdrawn from the case, "[t]hese are the type cases that an intelligent self-conscious attorney would tell his client sorry, Mr. Chamblee, you don't have a case."  (R. 329).  Attorney Bacharach told the ALJ he should withdraw from the case because he had decided that Plaintiff was not disabled before he heard testimony and that the ALJ was prejudiced against him.  (R. 330). The ALJ again said that "I mean when you persist with these type of cases that are useless, you make us waste time in this case when you should be really withdrawing from these type of cases."  (R. 331).

G.    **DISCUSSION**

        a)    Bias

        As is evident from the summary and quoted segments of the hearing transcript

above, there was an apparently heated exchange between counsel for the Plaintiff and the ALJ.  Plaintiff claims that this constitutes bias and that the ALJ had pre-judged his case prior to the hearing.  The law on this issue is that an ALJ should not conduct a hearing if he is prejudiced against a particular party or has an interest in the outcome of the hearing. 20 CFR §404.940; Miles v. Chater, 84 F.3d 1397, 1401 (11th Cir. 1996) (ALJ's derogatory remarks about Plaintiff's medical sources was sufficient to remand it for a hearing by a different judge).  Further, the alleged bias and prejudice "must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case."  United States v. Grinnell Corp., 384 U.S. 563, 583 (1966).  The allegations of bias in Grinnell were based on sharp comments directed to the defendants by the judge, who was stating his opinion of their case after having reviewed depositions and other evidentiary materials at their request.  Id.

The exchange between counsel and the ALJ was indeed unfortunate, but the ALJ's comment on the evidence was merely that there was little of it, which is an accurate assessment of the medical record, and that he had little to base a decision on prior to the date last insured, which was also accurate.  Plaintiff does not allege that the ALJ has some extrajudicial information about this particular Plaintiff or that he made comments about the case or evidence based on information outside the record.

Despite this exchange, the ALJ conducted a thorough hearing, asking relevant questions, and he allowed the Plaintiff to fully respond to his inquiries.  The ALJ also allowed the attorney to ask questions and pose hypotheticals to the vocational expert.  The ALJ wrote a detailed decision and accurately and throughly assessed the medical evidence

of record.  He fully explained his decision, including his finding that Plaintiff's allegations of pain and limitation were not credible.  His findings are supported by the record.

Plaintiff has sought little treatment for his back condition, takes only over the counter pain medication for his back, and has nothing whatsoever to support his claim of carpal tunnel syndrome.  Plaintiff' testified that he had no funds to pay for medical care, but his explanation for why he has not needed or sought even emergency room care (they would just give him pain pills) is not reasonable for someone in excruciating and chronic pain.  His description of his back pain as like being hit with a baseball bat does not comport with the objective medical findings of soft tissue injury and lumbar strain for which his treating physicians have prescribed only conservative treatment.  There is absolutely no medical evidence from any treating source that supports a completely disabling condition causing severe and unrelenting pain of the type that would require him to take five to 15 minute breaks every hour, as counsel suggests.  Plaintiff has a secondary education with a computer science degree.  These skills are transferrable, as the vocational expert suggested, to a number of sedentary jobs, which require limited lifting or postural changes.  Indeed, it would seem that several of Plaintiff's past jobs, tutoring computer students, being a case aide worker for prison ministries, would be less strenuous than the odd jobs he described as doing currently such as electrical and plumbing jobs.  Having considered all the evidence and reading the transcript carefully, it is clear that there is animosity between counsel and this judge, but there is also substantial evidence to support the ALJ's finding that he was not disabled and could perform his past relevant work.  A number of factors not present in this case may have resulted in a different recommendation such as If the hearing

and the decision by the ALJ was not thorough or the ALJ cut short the testimony of the Plaintiff or refused examination by the attorney.  It might be persuasive if the ALJ had commented on particular evidence, as the ALJ in Miles did, rather than comment simply on the lack of evidence or if the ALJ found Plaintiff not credible with no basis whatsoever. These factors might warrant remanding this case so that a different ALJ could assess the evidence.  However, there is not sufficient evidence in the record for another ALJ to give a different opinion about this Plaintiff.

　　　b)　　Hypothetical

The Commissioner correctly notes that since the ALJ found that Plaintiff could perform his past relevant work, he was not required to use vocational expert testimony. Gaddis v. Chater, 76 F.3d 893, 896 (8th Cir. 1996); Barrett v. Chater, 38 F.3d 1019, 1024 (8th Cir. 1994).   Thus, any errors alleged with regard to a hypothetical under such circumstances would be irrelevant.  Johnston v. Shalala, 42 F.3d 448, 452 (8th Cir. 1994).

Accordingly, it is respectfully **RECOMMENDED**:

That the decision of the Commissioner denying benefits be **AFFIRMED**.

**At Gainesville, Florida, this 19th day of July, 2006.**


**s/ A. KORNBLUM**
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and**

recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.